Argued September 19, 1940; reversed January 14, 1941

# GIUSTI *v.* C. H. WESTON CO. ET AL.

### (108 P. (2d) 1010)

*Frank S. Senn*, of Portland (Senn & Recken, of Portland, on the brief), for H. R. Shields.

*George D. LaRoche*, of Portland, for C. H. Weston Co.

*George D. LaRoche*, of Portland (Jerome S. Bischoff and S. J. Bischoff, both of Portland, on the brief), for Merrell A. Sisson.

*Arthur I. Moulton* and *Preston Gunther*, both of Portland (Gunther & Yerkovich, of Portland, on the brief), for respondent.

LUSK, J. In the autumn of 1935 the plaintiff was a member of the football squad of Washington High school in the city of Portland. As such he was entitled to the benefits of a contract entered into by the school with the defendant C. H. Weston Company, an Oregon corporation authorized to do business as a hospital association. By the terms of this contract Weston Company agreed to render medical and surgical services to the members of the football squad for a period of one year commencing September 9, 1935. The plaintiff sustained an injury claimed to be a dislocation of the left shoulder while playing in a football game on September 14, 1935, and a similar injury in another game on September 20, 1935. Thereafter the plaintiff sought and was given medical attention at. the offices of the Weston Company. On January 3, 1939, he brought this action to recover damages for the alleged malpractice of the defendants, Weston Company, H. R. Shields and Merrell A. Sisson, physicians and surgeons in the employ of the company, and Lynn Jones, another employe not a physician. The gist of the plaintiff's complaint is that the defendants negligently failed to diagnose his injury as a dislocation of the shoulder and negligently advised him to continue to play football; that he acted on this advice, and as a result suffered thereafter repeated dislocations of the shoulder with a consequent permanent injury.

At the trial a motion for a judgment of involuntary nonsuit, submitted by the defendant Lynn Jones, was allowed. Motions for nonsuit and a directed verdict submitted by the other defendants were denied. The

jury returned a verdict in the favor of the plaintiff in the sum of $5,000. From a judgment entered upon such verdict the defendants, other than Jones, have appealed.

We will consider first the errors assigned upon the denial of the motions for nonsuit and directed verdict. They were based upon the grounds, common to all the appealing defendants, that the proof failed to show negligence or that the acts of the defendants were the proximate cause of injury to the plaintiff; and with respect to the defendant Weston Company alone, that the defendants Shields and Sisson were independent contractors and that the company is, therefore, not liable for their negligence, but only for the failure to exercise ordinary care in the selection of reasonably competent and skillful physicians and surgeons.

██ The last point is, we think, without merit. The evidence discloses that Weston Company is engaged in the business of furnishing medical, surgical and hospital services for a profit. The defendants Shields and Sisson are physicians and surgeons who were, at the time of the events with which this cause is concerned, regular employes of Weston Company. They were furnished office space in the company offices and were paid monthly salaries. They were permitted to have their own patients, but in the offices so furnished them they rendered on behalf of their employer the professional services which Weston Company undertook to perform in the contract with Washington High school and in other contracts of like character—services, it may be added, which were a part of the objects and purposes for which the corporation was organized: § 46-901, Oregon Code 1930.

In these circumstances we think that the legal relationship existing between Weston Company and the

doctors employed by it was that of master and servant, and that Weston Company is liable for their negligent acts upon the principle of *respondeat superior*. The question has never before been decided by this court. It was suggested in *Feazle v. Industrial Hospital Association*, 164 Or. 630, 103 P. (2d) 300, though the circumstances under which the physician was employed in that case were different from those found here. The case, however, was disposed of on other grounds. The great weight of authority supports what seems to us to be the salutary rule that persons and hospitals that treat patients for hire with the expectation and hope of securing therefrom gain and profit are liable for negligence and malpractice on the part of physicians and nurses employed by them: 21 R. C. L., Physicians and Surgeons, 395, § 39; *Brant v. Sweet Clinic*, 167 Wash. 166, 8 P. (2d) 972; *Jenkins v. Charleston General Hospital and Training School*, 90 W. Va. 230, 110 S. E. 560, 22 A. L. R. 323; *Owens v. Atlantic Coast Lumber Corp.*, 108 S. C. 258, 94 S. E. 15. The only case in support of its position cited by counsel for Weston Company is *Union Pacific Railroad v. Artist*, 60 Fed. 365, 23 L. R. A. 581. This and other cases of like effect cited in 5 Labatt's Master and Servant, pp. 6214 et seq., § 2005, and in 29 A. L. R. 742, are authority for the proposition that where a corporation maintains a hospital and medical department for the benefit of its employes, supported by the voluntary contributions of the corporation and of its employes without the purpose to profit thereby, the enterprise is regarded as a charity and the corporation is not liable for the malpractice of the physicians or the negligence of the attendants it employs, but is responsible only for the want of ordinary care in selecting them. The opinion in the Artist

case, written by Circuit Judge Sanborn, recognizes the distinction between medical and hospital services furnished under those conditions and a case like the present, the court saying:

"If one contracts to treat a patient in a hospital— or out of it, for that matter—for any disease or injury, he undoubtedly becomes liable for any injury suffered by the patient through the carelessness of the physicians or attendants he employs to carry out his contract. If one undertakes to treat such a patient for the purpose of making profit thereby, the law implies the contract to treat him carefully and skilfully, and holds him liable for the carelessness of the physicians and attendants he furnishes."

■■ It is argued that a physician, by the very nature of the services he renders, is not subject to the control of those who employ him, and, therefore, that he must be regarded as an independent contractor and not as a servant. But the test of the right to exercise control over the agent as to the manner and details of his work, in a case of this kind, must give way to the rule that one bound to performance of a duty by contract cannot absolve himself from such obligation by devolution of performance thereof upon a stranger to it: *Jenkins v. Charleston Hospital and Training School,* supra; *Owens v. Atlantic Coast Lumber Corp.,* supra; 39 C. J. 1339, § 1549; 29 A. L. R. 737, annotation. By the contract in the instant case Weston Company promised and agreed, among other things, "to provide medical and surgical and hospital services, including dental services, medicines, medical and surgical appliances, X-ray and clinical laboratory diagnosis and physiotherapy for the members of the football squad of the school." It would not be a compliance with this undertaking, in our opinion, to provide these services

in a negligent manner, and the defendant Weston Company could not secure immunity from liability for the negligence of the physicians it might employ to perform the contract on its behalf by the plea that it exercised due care in the selection of such physicians.

Since, for reasons presently to be stated, we think that the motion of the defendant Sisson for a judgment of involuntary nonsuit should have been granted regardless of any question of negligence on his part, we shall consider only the contention of the defendants Shields and Weston Company that there was no evidence of malpractice against them. It is said that there is no medical testimony tending to show either that the plaintiff had actually sustained a dislocation of the shoulder or that the defendant Shields had not followed standard medical practice in making his diagnosis. At most, it is said, he was guilty of an error of judgment, which is not in itself evidence of negligence.

It appears from the record that the plaintiff suffered the first injury to his shoulder in a game with the Chemawa High school in Portland on September 14, 1935, and a recurrence thereof in a game at Hood River on September 20. He saw Dr. Shields on September 21 at his office. In describing the injury in the Chemawa game the plaintiff testified:

"A. Well, I broke through the line to hit the tackle, and pretty soon I was on the ground in a big pile-up there; I guess I was on the bottom. I tried to get up. It felt like my shoulder was busted, because the bone was sticking out, it felt like. I couldn't move my arm, it was stiff like this (illustrating). I recall plainly I was on my back, and one of the officials, or it might have been two of the officials, snapped it some way and it felt like the bone hopped back in joint."

The plaintiff further testified that the head of the arm bone was out of its socket downward, and that two of the officials of the game snapped it back in place, and that he was "groggy" or "out". He sustained a similar injury in the Hood River game. He swore that in his interview with Dr. Shields he described these occurrences, and that Dr. Shields, after examining him, told him that he could continue to play football, and gave him some analgesic balm to apply to the shoulder in the event that he should again be injured in that manner.

The record shows that Dr. Shields diagnosed the plaintiff's injury as an acromioclavicular bruise.

On the point that there was no evidence of a dislocation of the plaintiff's shoulder, it will suffice to say that Dr. McClure, a witness called by the defendants, testified that, based upon the history of the case given to him by the plaintiff in August, 1936, he made a definite diagnosis of recurrent dislocations of the shoulder and recommended an operation as the only remedy for the condition then existing. The history given to Dr. McClure was substantially the same as that previously given to Dr. Shields, but included as well an account of several alleged dislocations sustained after September 21, 1935.

██ It is true that there is no evidence that in his examination of the plaintiff Dr. Shields failed to use the tests approved by standard medical practice. It does not, however, necessarily follow that he was not guilty of negligence: *Long v. Austin,* 153 N. C. 508, 69 S. E. 500. To be sure, a physician is not responsible for mere errors of judgment nor does he insure the correctness of his diagnosis. He is required to use reasonable skill and care in determining through diagnosis the

condition of the patient and the nature of his ailment, and is liable for a failure due to the want of the requisite skill or care to diagnose correctly the nature of the ailment where injury or detriment results to the patient: *Moulton v. Huckleberry*, 150 Or. 538, 546, 46 P. (2d) 589. Now, in the present case there is medical testimony from which the jury could find that the plaintiff in his account of his injuries to Dr. Shields described, characteristically, a dislocation of his shoulder, and therefore they could find that a physician, exercising ordinary care and skill in making his diagnosis, would have discovered the true nature of the plaintiff's ailment. It is conceded that the proper treatment for a recent dislocation of the shoulder is immobilization for a period of time of the shoulder and arm, and that advice to the patient to play football would be highly improper. If, therefore, as the plaintiff testified, and Dr. Shields vigorously denied, such advice was given him, the evidence was sufficient, we think, to take the case to the jury, and the court committed no error in denying the motions for nonsuit and directed verdict of the defendants Shields and Weston Company.

■ As to the defendant Dr. Sisson, we think that the case must fail because adequate proof of proximate cause is wanting. It appears that in a football game on November 11th plaintiff's shoulder was dislocated, as he claims, for a third time, and the bone was snapped into place by the trainer who attended the game to give first aid. Dr. Sisson took no part in this operation, and, although the plaintiff saw him between the halves of the game, he did not talk to him about his shoulder. The plaintiff testified that on the following day, at the offices of Weston Company, he told Dr. Sisson

about his shoulder going out of joint in the two games in September and in the game on November 11th, and that Sisson and the defendant Lynn Jones examined him and that Jones made arrangements for the plaintiff to get a special type of shoulder pad to use in playing football. He testified that Sisson did not tell him not to play. The plaintiff, according to his testimony, had another recurrence of the injury in a game on Thanksgiving day. Dr. Sisson was there and snapped the bone back into place. Before November 12th, the first occasion on which Dr. Sisson saw the plaintiff with an opportunity to examine him, the plaintiff, acting, as he claimed, on the advice of Dr. Shields, had played football regularly for a period of seven weeks, playing a game each week and practicing in the meantime. It is not disputed that engaging in such a violent sport after two shoulder dislocations would be attended with the gravest risk of aggravating the injury. Indeed, a layman might almost arrive at that conclusion without any expert testimony on the subject. Thus, for all that appears, the condition of the plaintiff's shoulder may have become so serious by November 12, 1935, when Dr. Sisson examined him, as to be beyond repair save through the operation which Dr. McClure recommended in August, 1936. We do not say that this is the fact, but only that there is no way of determining from the evidence what the fact is. The question, therefore, whether Dr. Sisson's negligence, if any, was the proximate cause of the permanent impairment from which the plaintiff is suffering, is left entirely to guesswork and speculation, and for that reason alone he was entitled to a judgment of involuntary nonsuit: *Lippold v. Kidd,* 126 Or. 160, 269 P. 210, 59 A. L. R. 875; *Merriam v. Hamilton,* 64

Or. 476, 130 P. 406; *Vale v. State Industrial Accident Commission,* 160 Or. 569, 86 P. (2d) 956.

■ The defendants in this case were sued jointly. The complaint charged the defendants Shields and Sisson as employes of the defendant Weston Company and that they were acting on behalf of the corporation in what they did. It developed on the trial, however, and during the plaintiff's case that Shields and Sisson acted independently of each other. They did not see the plaintiff at the same time and never consulted together about his case. One of the assignments of error is based on a general exception to the instructions for the reason that the evidence disclosed that the defendants Shields and Sisson were not joint tort feasors and therefore there was a misjoinder of them as defendants. In view of the fact that the action must be dismissed as to the defendant Sisson, this question will be of no importance on another trial, though it should be observed that it was the duty of the defendants to raise the question before the court's charge to the jury, and, according to the case of *Tyler v. Trustees of Tualatin Academy,* 14 Or. 485, 13 P. 329, the proper procedure was for the defendants to have moved for a nonsuit upon the ground of a misjoinder. Otherwise the question was waived. See, also, *Smith v. Day,* 39 Or. 531, 539, 64 P. 812, 65 P. 1055.

■ However that may be, the plaintiff has contended in this court that the defendant Shields and Sisson are jointly and severally liable and seeks to deduce from the evidence a kind of partnership relation between the corporation and the two doctors. But we are of the opinion that this case is no different from any other in which a corporation is sued for tort and with it are joined as defendants the corporation's employes

who are charged as acting on its behalf in the commission of the wrongful acts. It is an elementary rule, as stated by this court in *Wemett v. Mount,* 134 Or. 305, 317, 292 P. 93, that a servant or employe cannot be held liable for the acts of another employe of a common master, when the first employe in no way participates in the acts of the second employe on which liability is sought to be predicated. The effort of the plaintiff to make a partnership out of the corporation and the two doctors is inconsistent with his own complaint, which alleges that the doctors were the employes of Weston Company and acting on its behalf, and, as stated, there is no evidence of joint participation by the defendants Shields and Sisson in any wrongful acts. Consequently, the question of the sufficiency of the evidence as to Dr. Sisson turns altogether upon the evidence as to what he did himself or failed to do, and he can in nowise be held responsible for the negligence of Dr. Shields.

■ Error is predicated by the defendant Shields upon the court's action in overruling his objections to certain questions propounded to the witness Eldon Jenne. In the autumn of 1935 Jenne was teacher of science and head coach of sports at Washington High school. On direct examination he was asked: "Q. To whom did you look during that season for advice as to whether a player who had been injured was in physical condition to continue with his football activities?" The witness was permitted to answer over the objection of the defendant Shields: "Well, we looked to the C. H. Weston Company or any other company the boy was insured with. In this case it was Weston Company." Again the witness was asked: "What was your practice during that time as to whether you would permit

a player to resume his football play and activities if the company having charge of the medical contract advised you not to?" He answered: "We never used a boy unless the company said it was all right to use him." A motion to strike this testimony was denied by the court. We think that these rulings were erroneous and prejudicial. The measure of the duty of the defendant Weston Company and of the physicians employed by it is the contract, which contains no provision requiring Weston Company to keep the school authorities advised as to the physical condition of the members of the football squad or to instruct them not to permit a boy to play because of his physical condition. Moreover, plaintiff pleaded the contract, not *in haec verba,* but according to its legal effect, and the complaint does not allege a duty on the part of the defendants such as is implied by the testimony given by the witness Jenne, nor a breach of that duty. The sole negligence alleged in the complaint was the failure to diagnose the plaintiff's injury correctly and giving the plaintiff erroneous advice.

Thus, the effect of this testimony was to inject into the case an issue not justified by the terms of the contract and not tendered by the complaint. Without this issue the whole case of the plaintiff depended upon his unsupported testimony that Dr. Shields had advised him to continue playing football. If the jury believed Dr. Shields as against the plaintiff it must necessarily have found for the defendants, because a wrong diagnosis in itself creates no liability. Since the testimony was received, we may presume that it was commented upon in argument, and, since there was no claim on the part of the defendants that any of them had advised the school authorities to have the plaintiff dis-

continue his football activities, prejudice to the defendants' case in all probability resulted. We think the rulings constituted reversible error.

■ The defendants excepted to the giving of the following instruction:

"The defendant Jones was bound to perform the duties assigned to him by the defendant Weston Company in a reasonably careful and prudent manner. He was not a physician or surgeon, but he was bound to exercise reasonable care in the discharge of his duties."

As heretofore stated, the court granted the motion of the defendant Lynn Jones for a judgment of involuntary nonsuit. The record does not disclose the basis of the ruling, though we assume that it was founded in the fact that Jones was not a physician or surgeon and that this is a malpractice case. In any event, there was no evidence whatever of any failure of duty on Jones' part, and it was error for the court to submit that question to the jury, and so, by implication, to authorize a verdict against Weston Company based on what he did or failed to do.

Other errors are assigned, but in view of the disposition to be made of the case and the nature of the questions suggested, we find it unnecessary to discuss them.

For the errors hereinabove found the judgment is reversed and the cause remanded to the circuit court, with directions to enter a judgment of involuntary nonsuit in favor of the defendant Sisson, and for further proceedings not inconsistent with this opinion as to the defendants Weston Company and Shields.

KELLY, C. J., and BELT, BAILEY and RAND, JJ., concur.

BEAN and ROSSMAN, JJ., not sitting.