Argued and submitted March 17, affirmed June 18, petition for review denied September 23, 1997 (326 Or 57)

Jedediah BRIDGE,
a minor by and through his Guardian Ad Litem
Dawn Severson, and Joyan Bridge and
Kenneth E. Bridge, Jr.,
husband and wife,
*Appellants,*

*v.*

Ronald E. CARVER, M.D.,
Mountain View Women's Clinic, P.C.,
and St. Charles Medical Center,
an Oregon corporation,
*Respondents,*

*and*

DESCHUTES COUNTY,
a political subdivision of the State of Oregon,
*Defendant.*

(94-CV-0278-ST; CA A93257)

941 P2d 1039

Jonathan G. Basham argued the cause and filed the briefs for appellants.

Gregory P. Lynch argued the cause for respondents Ronald E. Carver, M.D., and Mountain View Women's Clinic, P.C. With him on the brief were Stanley D. Austin and Hurley, Lynch & Re, P.C.

Alan Gladstone argued the cause for respondent St. Charles Medical Center. With him on the brief were Lindsey H. Hughes and Hallmark, Keating & Abbott, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

In this medical malpractice action, plaintiffs appeal from judgments entered for defendants[1] following a trial to the court based on stipulated facts. Plaintiffs make four assignments of error. We write only to address one argument that pervades the first three assignments of error. Plaintiffs concede that those assignments raise the same ultimate legal question: whether defendant Ronald E. Carver, M.D. (Carver), acted as an actual agent for defendant Deschutes County (the county) when he provided prenatal services to plaintiff Joyan Bridge (Bridge) on July 15, 1992, and, therefore, was subject to the Oregon Tort Claims Act (OTCA). ORS 30.260 through ORS 30.300. We conclude that he did and affirm.

The relevant facts are as follows. In 1989, the county established the Healthystart Prenatal Service (Healthystart), a program designed to provide prenatal health care to low-income women. Under the Healthystart Prenatal Service Agreement (Agreement), Healthystart is a cooperative arrangement among the county, defendant St. Charles Medical Center (St. Charles) and several local area obstetricians, including Carver. The Agreement provides that Healthystart is a county program and that the county

> "agrees that all County and [St. Charles] staff and Doctors performing Healthystart services as described herein are *deemed to be agents of the County and in the performance of activities on behalf of and under the direction of the County as such agents of the County, shall have the benefit of and be subject to the Oregon Tort Claim[s] Act.*"

(Emphasis supplied.)

Eligible women who sign individual patient services agreements and pay a basic program fee become Healthystart patients and receive prenatal services. The services are provided predominantly at a county facility by a nurse practitioner and other staff provided by the county and by St. Charles. The county also refers patients to St. Charles for

---

[1] The judgments for defendants Ronald E. Carver, M.D., Mountain View Women's Clinic, P.C., and St. Charles Medical Center were entered pursuant to ORCP 67 B. Defendant Deschutes County is not a party to this appeal.

appropriate diagnostic tests. Participating doctors review patient records monthly, consult on high-risk pregnancies and deliver babies at St. Charles. Extremely high-risk patients are referred directly to a participating doctor for care. If an emergency occurs after regular clinic hours, a Healthystart nurse practitioner refers the patient to St. Charles.

Bridge, who was pregnant with plaintiff Jedediah Bridge (Jedediah), became a Healthystart patient in March 1992. On July 15, 1992, when Bridge was in her 26th week of pregnancy, she contacted the after-hours Healthystart nurse practitioner because she believed that her placental membranes had ruptured and that she was going into premature labor. The nurse practitioner told Bridge to go to St. Charles for evaluation. Bridge did so and identified herself as a Healthystart patient. She was seen by a staff nurse, who called Carver, the Healthystart doctor on call, to examine Bridge. Carver tested Bridge for signs of premature rupture of her membranes, but concluded that she was not going into premature labor and discharged her. On July 24, 1992, Jedediah was born. He suffered severe complications and eventually was diagnosed with cerebral palsy. Plaintiffs filed this action, claiming that, as to Carver's treatment of Bridge on July 15, 1992, Carver and the county were negligent in several respects and that St. Charles and Carver's private practice group, defendant Mountain View Women's Clinic, P.C. (Mt. View), were vicariously liable for Carver's negligent acts. Plaintiffs sought damages in excess of $13 million. Defendants responded that when Carver treated Bridge, he was acting as an agent of the county and that the OTCA limits plaintiffs' recovery to $500,000 and precludes plaintiffs from bringing suit against Carver, Mt. View and St. Charles individually.

The trial court bifurcated the agency issue from the liability and damages portion of the case. After a stipulated facts trial on the agency issue, the court held that, based on "all of the words in the [A]greement, not simply one paragraph or one sense," when Carver was treating Bridge, he was acting as the actual agent of the county and not as the actual agent of St. Charles. The trial court also held that when Carver treated Bridge on July 15, 1992, St. Charles

was not acting as an agent of the county. Finally, the court concluded that, because Carver was acting as the county's actual agent when he treated Bridge, plaintiffs were precluded under ORS 30.265[2] from recovering from Carver on a direct liability theory or from either St. Charles or Mt. View on a vicarious liability theory. The court subsequently entered the judgments from which plaintiffs now appeal.

Plaintiffs attack the trial court's holding that when Carver treated Bridge on July 15, 1992, he acted not as an agent of St. Charles but as an agent of the county. Plaintiffs rely on the language of the Agreement providing that Carver is "deemed" to be the county's agent, and the county's concession that it did not exercise control over how Carver provided prenatal services to Healthystart patients, to arrive at "the inescapable conclusion that [Carver] acted at most as [the county's] ostensible agent." Consequently, they argue, relying on our opinion in *Giese v. Bay Area Health District*, 101 Or App 410, 415, 790 P2d 1198, *rev den* 310 Or 281 (1990), Carver is not entitled to protection under the OTCA. Defendants respond that, under controlling case law, the county is not required to exercise the level of control that plaintiffs demand and that under plaintiffs' proposed agency test, doctors would abrogate their independent professional judgment, which "would reduce the intended agency relationship to absurdity by stripping the doctor of the ability to perform the very functions County seeks to employ." We agree with defendants.

Where, as here, the facts are not in dispute, the question of agency is one of law. *Moxness v. City of Newport*, 89 Or

---

[2] ORS 30.265 provides, in part:

"(1)   Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * * arising out of a governmental or proprietary function * * *. The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only. The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of their employment or duties gives rise to the action or suit. No other form of civil action or suit shall be permitted. If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant."

App 265, 268, 748 P2d 1014, *rev den* 306 Or 79 (1988). The OTCA limits the remedy available to a plaintiff injured by the tortious act of a public body's agent, when acting within the scope of its duties, to "an action against the public body only." ORS 30.265(1). We have construed that statute to exclude from its protection a person who acts merely as an ostensible, or apparent, agent of a public body. *Giese,* 101 Or App at 415. Whether a person is acting as an actual agent of a public body for the purposes of the OTCA depends on whether the functions performed are on behalf of the public body and whether the public body has the right to control the agent. *Moxness,* 89 Or App at 268.

In this case, the parties agree that Carver was performing Healthystart services for the benefit of the county when he treated Bridge on July 15, 1992. The only question is whether the county exercised the requisite degree of control over Carver's provision of prenatal services to Bridge on July 15, 1992.

The facts in this case are analogous to those in *Samuel v. Frohnmayer,* 82 Or App 375, 728 P2d 97, *mod* 84 Or App 80, 728 P2d 97 (1986), *rev den* 303 Or 261 (1987). In that case, a peer review committee (committee) was established at the request of the Workers' Compensation Department (department) to review chiropractic billings when requested to do so by the department. The department did not exercise control over the manner in which the committee conducted its investigations. It controlled only which cases the committee reviewed and the scope of the committee's investigations. In an action for injuries allegedly incurred as a result of actions taken by the committee, we held that the chair of the committee was properly characterized as an "agent" of the department for purposes of the OTCA. *Samuel,* 82 Or App at 381.

In this case, Carver agreed to provide prenatal services on an "on-call" basis to Healthystart patients. Carver did not control which patients he saw or when he saw them. Healthystart administrators determined the criteria used to refer Healthystart patients to a doctor when necessary. The Healthystart nurse practitioner who received Bridge's telephone call on July 15, 1992, determined that Bridge should go directly to St. Charles. When Bridge arrived, the nurse on

duty determined that she should be seen by Carver, who was the Healthystart doctor on call at the time. Although the county did not exercise control over the manner in which Carver treated Bridge on July 15, 1992, it did control which patients Carver treated and the scope of his treatment as a Healthystart physician. *Accord Samuel,* 82 Or App at 381 ("[A]lthough the Department did not exercise control over the manner in which the investigations were conducted, it did control which case files were subject to review and the scope of those investigations."). Because Carver was an actual agent of the county, this case is distinguishable from *Giese.* Under these circumstances, the trial court did not err in concluding that Carver was an actual agent of the county and thus was covered under the OTCA.

Affirmed.