Argued and submitted July 17, 2009, affirmed March 17, 2010

David EADS
and Diane Eads,
individually and as husband and wife,
*Plaintiffs-Appellants,*

*v.*

Timothy R. BORMAN, D.O.;
Salem Hospital,
a registered Oregon non-profit corporation;
Michael J. George, M.D.;
and Salem Radiology Consultants, P.C.,
an Oregon Professional Corporation,
*Defendants,*

*and*

WILLAMETTE SPINE CENTER, LLC,
an Oregon corporation,
*Defendant-Respondent.*

Marion County Circuit Court
05C18610; A137410

227 P3d 826

▮▮▮▮▮▮▮▮▮▮

Maureen Leonard argued the cause for appellants. With her on the briefs was David K. Miller.

Pamela J. Stendahl argued the cause for respondent. With her on the brief were Molly Jo Mullen, and Bodyfelt Mount LLP.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

WOLLHEIM, P. J.

▮▮▮▮▮▮

---

* Brewer, C. J., *vice* Edmonds, P. J.

## WOLLHEIM, P. J.

Plaintiff in this medical malpractice action appeals a limited judgment in favor of defendant Willamette Spine Center, LLC.[1] Plaintiff underwent back surgeries, which injured his spinal cord.[2] Plaintiff sought damages from defendant, the surgeon (Dr. Borman), and a number of other medical providers. He contended that Borman was defendant's actual or apparent agent and, therefore, defendant was vicariously liable for plaintiff's injuries. Defendant moved for summary judgment. The trial court concluded that plaintiff had not presented evidence sufficient to raise a genuine issue of material fact as to whether Borman was defendant's actual or apparent agent. We affirm.

When reviewing a trial court's grant of summary judgment, we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party—in this case, plaintiff. *Vaughn v. First Transit, Inc.*, 346 Or 128, 132, 206 P3d 181 (2009). Defendant is a limited liability company that leased the medical office building where Borman's office was located. It identified the building as the Willamette Spine Center and had placed signage on and near the building using that name. At least one of the exterior signs also included a logo. Defendant sublet areas of the building to various medical providers. The names of the subtenant medical providers were listed on a window near the front door of the building. Dr. Michael Freeman is one of defendant's members and also has an office in the Willamette Spine Center building.

One of defendant's subtenants was Dr. Frederick Tiley who, in turn, entered into an association agreement with Borman. Pursuant to that agreement, among other things, Tiley shared space with and collected rent from Borman. In addition, in the association agreement, Tiley

---

[1] The trial court entered a limited judgment dismissing only plaintiffs' claims against Willamette Spine Center, LLC. No other defendant is a party to this appeal.

[2] Both David Eads and his wife, Diane Eads, are plaintiffs in this case. However, for ease of reference, we refer to David Eads as plaintiff throughout this opinion.

identified himself as "an established spine surgeon with the Willamette Spine Center."

Borman used business cards that, along with his name and contact information, included the name Willamette Spine Center, the building address, and the logo that also appeared on one of the exterior signs. In addition, in a listing for a professional convention, Borman identified himself as "Orthopedic spinal surgeon, Willamette Spine Center, Salem, Ore." Furthermore, in the record of his contributions to a particular political action group, Borman identified himself as "Willamette Spine Center/physician."

Some physicians in the Willamette Spine Center building placed an advertisement in the yellow pages using the term "WSC providers," and the logo discussed above. In that ad, they also referred to their practice as "Willamette Spine Center Chiropractic Physicians." Borman's name is not listed in that yellow page advertisement. In addition, a printed page of an Internet website dated May 24, 2006, was submitted to the trial court. The website is titled "Willamette Spine Center," contains the logo, and has contact information for Tiley as well as Dr. Donald Olson. It also provides information about those doctors as well as each of their staff. It does not include any contact or other information relating to Borman. Furthermore, it does not appear to have specific information about any of the physicians in the building aside from Tiley and Olson. The website contains text stating,

> "Willamette Spine Center was developed from a desire to provide comprehensive spinal care and pain management services, equipped with state of the art equipment, dedicated physicians who are expert in the practice, and knowledgeable staff committed to serving the needs of the patients. The patients served by the Willamette Spine Center are individuals with both spinal and pain disorders. The center utilize[s] all of its medical providers as a multidisciplinary team to assure patients receive the services they need from the onset of the disease process to the completion of a rehabilitative program."

Plaintiff also submitted an article posted on the Internet in 2001, in which Freeman identified himself as the co-medical director of the Willamette Spine Center.

Through his own work, plaintiff became acquainted with Freeman and, on the basis of that acquaintance, sought treatment from Freeman for back pain.[3] Freeman referred plaintiff to a physical therapist whose office was in the Willamette Spine Center building and, eventually, to Borman. Plaintiff "believed Dr. Borman was a Willamette Spine Center surgeon and, as such, was acting on behalf of his clinic, Willamette Spine Center." Furthermore, Borman's office was in the Willamette Spine Center building and "[t]here was nothing [plaintiff] saw or w[as] told that suggested that Dr. Borman was independent of the Willamette Spine Center." In September 2003, Borman performed a series of back surgeries on plaintiff, injuring his spinal cord during those surgeries. Those injuries left plaintiff partially paralyzed.

Plaintiff sued a number of medical providers as well as defendant. He sought recovery for his injuries from defendant on the theory that Borman was defendant's actual or apparent agent. Defendant moved for summary judgment on those issues, contending that no objectively reasonable juror could find, based on the facts of this case, that Borman was defendant's actual or apparent agent. The trial court agreed. At the hearing on defendant's summary judgment motion, the trial court stated that the evidence and argument presented by plaintiff was

"not enough. It's not enough. I'm trying like crazy to read this in a way that is such that we can keep this landlord in this case. But it's smoke and mirrors.

"* * * * *

"I'd require some facts that would give us the basis upon which [plaintiffs] could rely that was something that was caused by the * * * landlord of this property. And I can't find any facts that connect it up."

Based on its conclusions, the trial court granted summary judgment in favor of defendant.

---

[3] Plaintiff stated, in his affidavit, that Freeman "recommended that I seek therapy and medical care from the practitioners at his clinic, the Willamette Spine Center. I was aware that he was affiliated with the Willamette Spine Center and, given our acquaintance, relied upon his recommendation."

On appeal, we review the trial court's order of summary judgment to determine whether we agree that "there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C; *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 460, 157 P3d 1272 (2007). There is no genuine issue of material fact if, "based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

■ With the foregoing standards in mind, we turn to plaintiff's assertion that the trial court improperly granted summary judgment because "[t]he law and the facts support an actual agency relationship" between defendant and Borman. (Boldface omitted.) According to plaintiff, the evidence that Borman offered spine-related services and that Freeman "referred [plaintiff] to, and scheduled him with, Dr. Borman" is sufficient to demonstrate that there was an actual agency relationship.[4] We disagree.

■ Generally, an agency relationship "results from the manifestation of consent by one person to another that the other shall act *on behalf of and subject to his control*, and consent by the other to so act." *Vaughn*, 346 Or at 135 (quoting *Hampton Tree Farms v. Jewett*, 320 Or 599, 617, 892 P2d 683 (1995); internal quotation marks omitted; emphasis in *Vaughn*). "[T]he principal's 'control' over what the agent shall or shall not do is necessary for an agency relationship, but it is not, on its own, sufficient to create such a relationship." *Vaughn*, 346 Or at 136. In addition to the requirement that the principal have a right to control the acts of its agent, for an agency relationship to exist, both parties must also agree that the agent will act on the principal's behalf. *Id.*; *see also Checkley v. Boyd*, 198 Or App 110, 134, 107 P3d 651, *rev den*, 338 Or 583 (2005) (principal's consent is necessary for actual agency relationship).

■ Here, no facts suggest that either requirement for an actual agency relationship has been satisfied. The evidence

---

[4] Plaintiff does not assert that Borman was defendant's employee.

identified by plaintiff—primarily that Freeman, one of defendant's members and also a practitioner in the Willamette Spine Center building, referred plaintiff to and scheduled him with Borman—is not indicative of an actual agency relationship. A referral of a patient by one medical provider to another does not, by itself, establish any right to control or an agreement to an agency relationship.

However, plaintiff suggests that that general test for agency does not apply in this case. Instead, he contends that, in the case of physicians, different standards apply to determine whether an actual agency relationship has been created. In support of that assertion, plaintiff relies on *Giusti v. Weston Co.*, 165 Or 525, 108 P2d 1010 (1941), and *Bridge v. Carver*, 148 Or App 503, 941 P2d 1039, *rev den*, 326 Or 57 (1997).

In *Giusti*, the court addressed whether a hospital was liable for the medical malpractice of certain physicians "in the employ of the company[.]" 165 Or at 528. The hospital asserted that the physicians were "independent contractors and that the company is, therefore, not liable for their negligence[.]" *Id.* at 529. Specifically, the defendant argued that "a physician, by the very nature of the services he renders, is not subject to the control of those who employ him, and, therefore, that he must be regarded as an independent contractor[.]" *Id.* at 531. However, the court concluded that the hospital's argument was without merit: The physicians

> "were, at the time of the events with which [the case] is concerned, regular employees of [the hospital]. They were furnished with office space in the company offices and were paid monthly salaries. They were permitted to have their own patients, but in the offices so furnished them they rendered on behalf of their employer the professional services which [the hospital was contractually obligated to perform]."

*Id.* at 529. The court elaborated that the rule that "persons and hospitals that treat patients for hire with the expectation and hope of securing therefrom gain and profit are liable for negligence and malpractice on the part of physicians and nurses employed by them[.]" *Id.* at 530. Furthermore, although a hospital may not be able to control the manner

and details of a physician's work, "one bound to performance of a duty by contract cannot absolve himself from such obligation by devolution of performance thereof upon a stranger to it[.]" *Id.* at 531.

The circumstances presented in this case, however, are a far cry from those at issue in *Giusti*. Unlike in that case, here, there is no contention that there was a direct employment relationship between defendant and Borman. Furthermore, Borman was not engaged to perform a service that defendant was, itself, contractually obligated to provide. Thus, plaintiff's reliance on *Giusti* is misplaced.

In *Bridge*, the physician at issue provided prenatal services as part of a county program (Healthystart). A written agreement provided that the physician, in performance of activities on behalf of and under the direction of the county, was "deemed to be [an] agent[ ] of the County[.]" 148 Or App at 506 (emphasis omitted). We concluded that, for physicians to be agents of the county, the county need not have a level of control that would cause the physicians to "abrogate their independent professional judgment[.]" *Id.* at 508. Instead, it was sufficient that the physician

> "agreed to provide prenatal services on an 'on-call' basis to Healthystart patients. [The doctor] did not control which patients he saw or when he saw them. Healthystart administrators determined the criteria used to refer Healthystart patients to a doctor when necessary. * * *. Although the county did not exercise control over the manner in which [the doctor] treated [the patient at issue], it did control which patients [the doctor] treated and the scope of his treatment as a Healthystart physician."

*Id.* at 509-10.

Contrary to plaintiff's assertion, *Bridge* employed a version of the general test for agency to conclude that the physician at issue was an agent of the county. A written agreement between the parties evidenced their consent to an agency relationship. Furthermore, the county exercised a degree of control over the doctor's practice; as set forth above, it controlled what patients he saw, when he saw them, and the scope of his treatment of them within the program. Thus,

the evidence supported a finding that the doctor was the actual agent of the county.

In contrast, here, there is no indication that anyone agreed that Borman would act as an agent for defendant. Furthermore, the referral of a patient to Borman by Freeman does not establish that defendant (or Freeman himself) had any right to control any part of Borman's practice. Indeed, unlike in *Bridge*, not one piece of the evidence presented, viewed in the light most favorable to plaintiff, even suggests that anyone other than Borman himself controlled what patients he saw, when he saw them, and the scope of treatment he provided to them. Nor was there any evidence that defendant employed Borman to provide a service that defendant had a legal obligation to provide. Based on all the foregoing, we conclude that there was no evidence in this case from which a reasonable juror could conclude that Borman was the actual agent of defendant.

 We next turn to plaintiff's contention that defendant, by its conduct, created an apparent agency relationship between it and Borman and that, based on that apparent agency, defendant is liable for Borman's acts. We have articulated the relevant standard as follows:

> "One who represents that another is his servant or other agent and thereby causes a third person to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

*Miller v. McDonald's Corp.*, 150 Or App 274, 282, 945 P2d 1107 (1997) (quoting *Restatement (Second) of Agency* § 267 (1958); internal quotation marks omitted). "Apparent agency creates an agency relationship that does not otherwise exist[.]" *Miller*, 150 Or App at 282 n 4.[5] An apparent agency

---

[5] As we explained in *Miller* and in *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 40 P3d 506 (2002), apparent agency is a distinct concept from apparent authority. While the first works to create an agency relationship between two parties, the second "expands the authority of an actual agent." *Miller*, 150 Or App at 282 n 4. Accordingly, "apparent authority is relevant only if actual agency has already been established." *Kotera*, 179 Or App at 271-72 n 15. As we have concluded above, plaintiff in this case failed to present evidence from which a reasonable jury could find an actual agency relationship. For that reason, the concept of apparent authority is not applicable.

relationship can be created *only* by some conduct on the part of the purported principal. *Checkley*, 198 Or App at 134.[6] Thus, pursuant to general agency principles, for a party to be held vicariously liable based on an apparent agency relationship, two requirements must be met: (1) the principal must engage in conduct that holds out another as its agent and (2) the injured party must, as a result of that "holding out," rely on the care or skill of the apparent agent.

We agree with defendant and the trial court in this case that the evidence submitted by plaintiffs was not such that a reasonable jury could conclude that Borman was defendant's apparent agent. The only evidence of conduct undertaken by defendant, itself, was that it (1) leased a building from a third party and called that building the Willamette Spine Center, (2) placed signage on and near the building containing that name and a logo, (3) subleased space in the building to subtenants who were medical practitioners, and (4) placed the names of the practitioners in the building on a window beside the building's front door. Although it was apparently aware of Borman's presence in the building, defendant did not have a direct tenancy relationship with him. Instead, Borman was an associate of Tiley, one of defendant's subtenants. He shared space with and paid rent to Tiley. Furthermore, the act of renting space to tenants and placing signage on the building, including the names of the tenants within the building, is insufficient as a matter of law to constitute the "holding out" of Borman as an agent of defendant.

In addition, there was evidence that plaintiff was acquainted with Freeman, one of defendant's members. Based on that acquaintance, plaintiff sought treatment from Freeman at his office in the Willamette Spine Center building. Later, as a result of referrals from Freeman, plantiff saw other medical practitioners who had offices in the same building, including Borman. However, Freeman treated plaintiff in his capacity as a medical practitioner and referred plaintiff to Borman as part of that treatment relationship. Regardless of the fact that Freeman was also a member of defendant, his

---

[6] Although the court in *Checkley* used the term "apparent authority," the issue that it actually analyzed was one of apparent agency.

actions in the context of his professional practice did not constitute conduct on behalf of defendant, the landlord of the building.

Plaintiffs also submitted evidence that Borman included on his business card the same name and logo as were on the signs outside the Willamette Spine Center building and that he identified himself as being associated with the Willamette Spine Center in his registration for a professional conference and in paperwork related to a political donation. As well, in his association agreement with Borman, Tiley called himself an "established spine surgeon with the Willamette Spine Center." That evidence, however, does not relate to conduct *by defendant* holding Borman out as its agent. Furthermore, there is no suggestion in the record that plaintiff was aware of the association agreement, professional literature, or political contribution records.

Similarly, plaintiff presented evidence that some practitioners in the Willamette Spine Center building placed an advertisement identifying themselves as "Willamette Spine Center Chiropractic Physicians" and identifying "WSC providers." That advertisement contained the logo that was on the sign outside the Willamette Spine Center building. Furthermore, some of the practitioners set up a website relating to their practice and discussing "Willamette Spine Center." Again, there is no indication that *defendant* authorized those public representations, or even had any knowledge that they were made. As well, neither the advertisement nor the website contains any reference to Borman and there was no evidence that plaintiff saw or was aware of either one of them. Indeed, the printout of the website is dated 2006, which is several years after the events relevant to this action.

In sum, although plaintiff believed Borman was "acting on behalf of his clinic, Willamette Spine Center" and "there was nothing [he and his wife] saw or were told that suggested Dr. Borman was independent of the Willamette Spine Center[,]" that subjective belief is insufficient to give rise to an apparent agency relationship. Rather, to withstand summary judgment, plaintiff needed to present some evidence of conduct by *defendant* from which a reasonable jury could conclude that defendant, itself, held Borman out as its

agent and that plaintiff sought treatment from Borman in reliance on defendant's representations and conduct. Such evidence was not present here.[7]

Based on the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of defendant.

Affirmed.

---

[7] Plaintiff, in addition, contends that defendant should be liable for his injuries pursuant to the apparent agency rules this court discussed in *Themins v. Emanuel Lutheran*, 54 Or App 901, 637 P2d 155 (1981), *rev den*, 292 Or 568 (1982), and *Shepard v. Sisters of Providence*, 89 Or App 579, 750 P2d 500 (1988). In those cases, along with *Jennison v. Providence St. Vincent Medical Center*, 174 Or App 219, 25 P3d 358 (2001), we discussed when a hospital is liable under the doctrine of apparent agency for the negligence of independent contractor physicians who provide medical care in the hospital. In the context of hospitals, "physicians who are nominally 'independent contractors' may be treated as actual or ostensible hospital agents, for purposes of vicarious liability, when they perform professional services which are integral to hospital operations and which hospitals themselves hold themselves out to the public to provide." *Jennison*, 174 Or App at 229 (quoting *Shepard*, 89 Or App at 587; internal quotation marks omitted). There are several problems with plaintiff's reliance on that precedent in the context of this case, not the least of which are that those cases are specific to the hospital context and defendant in this case is a commercial landlord and not a hospital and that Borman is not an independent contractor engaged to provide services on behalf of defendant, but is, instead, a tenant in the building.