Argued and submitted July 23, reversed and remanded November 12, 1986,
reconsideration denied January 16, petition for review denied April 14, 1987
(303 Or 261)

## SAMUEL,
*Appellant,*

*v.*

## FROHNMAYER et al,
*Respondents.*

(137346; CA A37404)

728 P2d 97

Appeal from Circuit Court, Marion County.

Duane R. Ertsgaard, Judge.

David C. Force, Eugene, argued the cause and filed the brief for appellant.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff is a chiropractor and, at all times relevant to this action, was president of the Oregon Association of Chiropractic Physicians (OACP). While serving in that capacity, he volunteered at the request of the medical director of the Workers' Compensation Department (Department) to establish a peer review committee to review chiropractor billings to compensation insurance carriers. In this action, he seeks a judicial declaration that he is entitled under the Oregon Tort Claims Act, ORS 30.260 to 30.300, to be indemnified by the state for expenses incurred in defending a civil action brought against him personally by a chiropractor who sought damages for injuries allegedly incurred as a result of actions taken by the peer review committee, which plaintiff chaired. The trial court concluded that he was not entitled to indemnification and entered a judgment of dismissal.[1] We reverse.

The facts are stipulated. OACP is not and has never been an agency of the state. It had no legal obligation to establish a peer review committee. Neither OACP nor the members of the committee were paid for the services performed. The committee operated independently of the Department and did not have authority to reduce a contested bill or to initiate investigations. Rather, at the request of the Department, the committee reviewed particular case files with respect to which the Department had received complaints from an insurance carrier concerning the amount or nature of chiropractic treatment administered to injured workers. The Department had "no authority" over the committee's manner or method of review and was not authorized to alter the committee's report. It was not required, however, to adhere to the committee's report in preparing its own final order.

On August 1, 1977, Ferguson, an administrative assistant to the Department's medical director, contacted plaintiff at the behest of Firemen's Fund Insurance Company and requested that the committee review the frequency of treatment administered to an injured worker by Dr. John T. Checkal. On September 8, 1977, the committee submitted its report, signed by plaintiff, to the Department. The committee

---

[1] Plaintiff's contention that he is also entitled to indemnification for attorney fees incurred in the prosecution of this action is incorrect.

found that treatment had been "overutilized at the 30 to 40 percent level." On November 29, 1977, the Department issued its final order reducing Dr. Checkal's billing to the insurer by 35 percent.

Dr. Checkal sought administrative and judicial review of the order. The circuit court found that the Department's order was based solely on the findings of the peer review committee and that the committee was unauthorized by law or rule to consider evidence or issue findings regarding fees charged by chiropractors. Accordingly, it held that the order was invalid and without force and effect.

Dr. Checkal then filed a complaint against plaintiff. He alleged that the committee's report had "contributed materially" to the issuance of the invalid order and sought general, special and punitive damages in excess of $1,000,000. On April 23, 1982, plaintiff filed an answer and on May 21, 1982, he wrote to the Attorney General requesting that the Department of Justice assume the cost of his legal defense, because he was "being sued for services performed for and at the request of the State of Oregon." The Department of Justice refused, because OACP had never been an agency of the State of Oregon, and because there was no evidence that the Workers' Compensation Department retained, employed or appointed the peer review committee to act as an agent for the state.

This action was commenced on October 27, 1982. On November 26, 1982, an Assistant Attorney General mailed plaintiff a draft motion for summary judgment for plaintiff in his capacity as defendant in the action brought by Checkal, with a cover letter requesting that this declaratory judgment action be left in abeyance until the Checkal matter was resolved. Plaintiff, through private counsel, filed a motion for summary judgment in the Checkal case, which incorporated the materials furnished by the Attorney General. The motion was allowed. Checkal's appeal was dismissed by this court as untimely.

The dispositive issue is whether plaintiff, in his capacity as chairman of the peer review committee, was an "agent" of the state in the context of ORS 30.285. The statute provides, in pertinent part:

"(1)   The governing body of any public body shall defend, save harmless and indemnify any of its officers, employes and agents, whether elective or appointive, against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty.

"* * * * *

"(3)   If any civil action, suit or proceeding is brought against any state officer, employe or agent which * * * the state officer, employe or agent asserts to be based in fact upon an alleged act or omission in the performance of duty, the state officer, employe or agent may, after consulting with the Department of General Services file a written request for counsel with the Attorney General. The Attorney General shall thereupon appear and defend the officer, employe or agent unless after investigation the Attorney General finds that the claim or demand does not arise out of an alleged act or omission occurring in the performance of duty, or the act or omission complained of amounted to malfeasance in office or wilful or wanton neglect of duty, in which case the Attorney General shall reject defense of the claim."

Plaintiff does not contend that he was an officer or an employe of the state. Defendant does not claim that it denied plaintiff a defense on the basis of neglect of duty or malfeasance in office.

Plaintiff argues that, for the purpose of interpreting ORS 30.285, we should adopt the definition of agent suggested by the Attorney General in an opinion, 43 Op Atty Gen 145 (1983), rather than apply the common law definition,[2] adopted by the Oregon Supreme Court in *Kantola v. Lovell Auto Co.*, 157 Or 534, 537, 72 P2d 61 (1937), and derived from Restatement, Agency § 1 (1933):

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

The Attorney General's opinion concludes that, in the context

---

[2] The Attorney General's opinion was issued in response to a question by the administrator of the State Board of Accountancy concerning the status under the Oregon Tort Claims Act of certified public accountants who volunteer their services to the board to investigate and review complaints against board licensees. The Attorney General concluded that the accountants were agents of the state for purposes of the act.

of the Oregon Tort Claims Act, the existence of an agency relationship is not necessarily dependent on the principal's right to exercise "control" over the agent:

> "[A] person (not an employe or officer) is an agent of a public body for purposes of the Tort Claims Act if that person meets the usual 'control' tests with respect to the manner of performance of duties *or* if that person performs a function or responsibility of the public body *on behalf* of the public body. The person is not an agent, if a service (without supervision or control) is merely performed for the public body and not on its behalf." 43 Op Atty Gen at 149. (Emphasis in original.)

Plaintiff contends that he performed a function of the Department on behalf of the Department and thereby satisfied the Attorney General's definition of agent. The state contends that plaintiff merely performed a function for the public body rather than on its behalf or, in the alternative, that we should reject the Attorney General's suggested definition and apply the common law control test.

■ The meaning of agent in the context of the Oregon Tort Claims Act presents an issue of first impression.[3] We agree with the Attorney General's opinion that control is not necessary to establish an agency relationship in the context of the OTCA, at least with respect to those who volunteer their services to the state at its request. *See* Restatement (Second) Agency § 1 (1957), *comment f* (definition of "agent" in a statute depends on purpose of statute). The state receives an invaluable service from persons who are willing to volunteer their time and energy to the community. Public policy dictates that they be encouraged, rather than discouraged, to volunteer by holding them harmless from personal liability arising out of services performed on behalf of the state. However, because we conclude that plaintiff was an agent of the state under either definition, we need not base our decision on the merits of the Attorney General's proposition.

■ Defendants' primary position is that plaintiff was not an agent under either definition, because the committee did not "carry forward" the state's business. They contend that the peer review committee merely furnished a service to *assist*

---

[3] The Oregon Supreme Court has suggested in dictum that the common law definition is applicable. *Cain v. Rijken,* 300 Or 706, 713, 717 P2d 140 (1986).

the Department in the performance of its duties by reviewing investigations made by others and that it did not itself perform investigations on behalf of the Department. They assert that the peer review committee is a "perfect example" of a review and consultation body, as opposed to a body that performs the functions assigned to it by law, and that it then delegates away. They point to the fact that the Department was free to ignore the committee's recommendations.

We disagree with defendant's contention that the committee did not perform an "investigation" on behalf of the department and conclude that it was delegated to perform a function on behalf of the Department. It is irrelevant that the services rendered did not require the physical discovery or collection of relevant documents, rather than an assessment of the injured worker's case file that was submitted to the committee, and defendants do not contend that the medical director of the Department did not have a duty to respond to Firemen's Fund's complaint or that he had no authority to enlist the services of the peer review committee.

With respect to the additional requirement of control imposed by the common law test, it is stipulated that the Department exercised no control over the manner in which the peer review committee conducted its investigations. On the other hand, the committee was not delegated the authority to choose which billings it would investigate. Rather, the committee investigated only particular billings at the specific request and at the direction of the Department. Therefore, although the Department did not exercise control over the manner in which the investigations were conducted, it did control which case files were subject to review and the scope of those investigations.

Under the circumstances, we conclude that the control which the Department exercised over the committee was sufficient to establish an agency relationship under the common law definition.

Reversed and remanded.