Argued and submitted January 12, reversed and remanded for further proceedings April 25, Giese's reconsideration and Witt's reconsideration denied August 1, both petitions for review denied August 28, 1990 (310 Or 281)

**GIESE,**
*Appellant,*

*v.*

**BAY AREA HEALTH DISTRICT,**
dba Bay Area Hospital,
*Defendant,*

*and*

**WITT,**
*Respondent.*

(88 CV 0331; CA A50417)

790 P2d 1198

Kathryn H. Clarke, Portland, argued the cause and filed the briefs for appellant.

Garrison F. Turner, Ashland, argued the cause for respondent. With him on the brief was Frohnmayer, Deatherage, Pratt, Jamieson & Turner, P.C., Ashland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## EDMONDS, J.

Plaintiff appeals from a judgment dismissing his claim for medical malpractice against defendant doctor (defendant). He argues that the trial court erred in holding that defendant was entitled to invoke the provisions of the Oregon Tort Claims Act (OTCA). ORS 30.260 to ORS 30.300. We reverse and remand for further proceedings.

After suffering an injury to his groin plaintiff went to the emergency room of defendant hospital, a public institution, and was treated by defendant. Three and one-half years later, he filed this action against defendant and the hospital, alleging that defendant misdiagnosed his injury and that, as a result, removal of a testicle was later required. Defendant had entered into a contract with a group of physicians to perform their obligations under a contract with the hospital to provide emergency room services. Both contracts characterized defendant's relationship with the hospital as independent contractor. Defendant and the hospital moved to dismiss on the ground that ORS 30.275(8)[1] bars plaintiff's action. Plaintiff, who was a minor at the time of the injury, invoked the provisions of ORS 12.160(1).[2] The trial court dismissed the hospital as a party on the ground that ORS 30.275(8) foreclosed application of ORS 12.160(1) and denied the motion as to defendant. The action proceeded to trial, and defendant defended on the ground that he was an "agent" of the hospital under ORS 30.275(8). The trial judge dismissed plaintiff's action, holding:

---

[1] ORS 30.275(8) provides:

"Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

[2] ORS 12.160 provides, in relevant part:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050 and 12.070 to 12.250 is:

"(1) Within the age of 18 years,

"* * * * *

"the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any disability, nor shall it be extended in any case longer than one year after such disability ceases."

"It is clear that defendant Witt was the ostensible, if not actual, agent of Hospital."

We read the trial court's statement to mean that an ostensible agent of a public body is entitled to immunity under OTCA. The issue is whether that is the result that the legislature intended.

In *Samuel v. Frohnmayer,* 82 Or App 375, 380, 728 P2d 97, *modified,* 84 Or App 80 (1986), *rev den* 303 Or 261 (1987), we said:

"The meaning of agent in the context of the Oregon Tort Claims Act presents an issue of first impression. We agree with the Attorney General's opinion [43 Op Att'y Gen 145 (Or 1983)] that control is not necessary to establish an agency relationship in the context of the OTCA, at least with respect to those who volunteer their services to the state at its request. *See Restatement (Second) Agency* § 1 (1957), *comment* f (definition of 'agent' in a statute depends on purpose of statute). The state receives an invaluable service from persons who are willing to volunteer their time and energy to the community. Public policy dictates that they be encouraged, rather than discouraged, to volunteer by holding them harmless from personal liability arising out of services performed on behalf of the state. However, because we conclude that plaintiff was an agent of the state under either definition, we need not base our decision on the merits of the Attorney General's proposition." (Footnotes omitted.)

In *Moxness v. City of Newport,* 89 Or App 265, 748 P2d 1014, *rev den* 306 Or 79 (1988), the issue was whether the City of Newport was entitled to indemnity under OTCA on the ground that it was an agent of the state. We said:

"The parties dispute the appropriate test for determining what constitutes an agent under the statute. State contends that the common law test for agency discussed in *Cain v. Rijken,* 300 Or 706, 717 P2d 140 (1986), is appropriate. City contends that *Samuel v. Frohnmayer,* 82 Or App 375, 728 P2d 97 (1986), *modified,* 84 Or App 80, *rev den* 303 Or 261 (1987), is directly on point and is controlling. In that case we suggested a broader test for determining the state's responsibility for actions of putative agents who are volunteers. *See* 43 Op Att'y Gen 149 (Or 1983). Nevertheless, we based our conclusion that the state had to indemnify the plaintiff under ORS 30.285(1) on the issues of control *and* whether the plaintiff

was performing a function on behalf of the state. That, in essence, is the common law test for agency.

"There is no question but that city was carrying out a function on behalf of state. The principal issue is whether there was the requisite degree of control. Because there is no dispute as to the factual predicate of the legal issue, the question of agency becomes one of law. In *Samuel v. Frohnmayer, supra,* we noted that it had been stipulated by the parties that the state had exercised no direct control over the manner in which the committee, chaired by the plaintiff, conducted its investigations. We also noted that the state selected the files that it wanted the plaintiff's committee to investigate. We concluded:

" 'Therefore, although the [state] did not exercise control over the manner in which the investigations were conducted, it did control which case files were subject to review and the scope of those investigations.' 82 Or App at 381." *Moxness v. City of Newport, supra,* 89 Or App at 268.

■ ■ Plaintiff argues that it would be inappropriate to construe OTCA to apply to an agent whose authority is based, not on the right to control, but on apparent authority. He points out that the doctrine of apparent authority is intended to protect innocent third parties who rely on a holding out by the principal that there is an actual agency relationship and that it should not be construed to allow an apparent agent to use that holding out as a shield from liability. We cannot find, nor have the parties cited, any cases which use apparent authority for the purpose proffered by defendant. The underlying policy of apparent authority does not suggest such a use. In *Wiggins v. Barrett & Assoc., Inc.,* 295 Or 679, 669 P2d 1132 (1983), the court said, in comparing the elements of apparent authority with equitable estoppel:

"[B]oth doctrines are employed to prevent one from proving an important fact to be something other than what by act or omission he has led another party justifiably to believe. Both doctrines rest upon principles of good faith and honesty and the notion that one should not be able to take advantage of the falsity of what he has led another to believe to be true. There is really no practical difference between the application of one doctrine or another to hold a principal liable for the promise of the agent." 295 Or at 689.

So far as we can determine from the legislative history, there is no indication that the legislature contemplated the issue of whether an apparent agent would fall within the meaning of the term "agent," as used in ORS 30.275(8). The proper inquiry then is to determine what the legislature would have intended had it considered the problem. *Security State Bank v. Luebke,* 303 Or 418, 737 P2d 586 (1987). To answer that inquiry we look at the language used, the statutory objective and any other evidence of the intended meaning. ORS 174.010; *State v. Parker,* 299 Or 534, 704 P2d 1144 (1985).

The statutory objective of ORS 30.275(8) is to limit the liability of public bodies and their officers, employees and agents. We have previously construed "agent" under OTCA to mean one who is subject to the right of control. *Moxness v. City of Newport, supra; Samuel v. Frohnmayer, supra.* We discern no legislative purpose to extend that definition to include an ostensible agent when the doctrine of apparent authority is intended to achieve a different purpose.

It is unclear whether the trial court's ruling includes a finding that defendant was an actual agent and subject to the control of the hospital. There was evidence to support such a finding, and it would entitle defendant to the protection of ORS 30.275(8). However, because we are unable to determine whether the trial court made that finding, we must remand this case to the trial court for further proceedings.

Reversed and remanded for further proceedings not inconsistent with this opinion.