**CENTER FOR LEGAL STUDIES, INC., and Scott Hatch, Director, Center for Legal Studies, Inc., Plaintiffs–Appellants,**

v.

**Ray LINDLEY; Lin Fleming; David Young; Oregon Department of Education; Oregon Office of Educational Support Services, and State of Oregon, Defendants–Appellees.**

No. 99–35947.

D.C. No. CV–99–00473–REJ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2000.

Decided Jan. 8, 2001.

Before BEEZER, RYMER, and GRABER, Circuit Judges.

### MEMORANDUM *

The Center for Legal Studies, Inc., and its director, Scott Hatch, (collectively, "the Center") appeal from the district court's entry of summary judgment for defendants. The Center appeals only on the claims it asserted against defendant David Young in his individual capacity.[1] The Center's action alleged that Young, an official of the State of Oregon's Office of Degree Authorization ("ODA"), misused his official position to unreasonably restrict the Center's ability to offer paralegal training courses. The Center argues that the district court erred in (1) ruling that Young is immune from liability because he was acting within the scope of his state employment; (2) failing to rule on its motion for further discovery; and (3) ruling that Young did not violate its constitutional rights. On de novo review, *see Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir.2000), we affirm.

### I

■ The Center first argues that Young was not acting within the scope of his employment because Oregon has no regulatory authority over its program. The Center is mistaken. *See* OR.REV.STAT. § 345.010(4) (1999) and OR. REV. STAT. § 345.015(8) (1999). Section 345.015(8) does not exempt the Center because, based on the original brochure and the testimonials Hatch submitted, the school appeared to be marketing the course to those seeking to *enter* the paralegal field.

The Oregon Department of Education ("ODE"), through the Superintendent of Public Instruction, administers and enforces the laws and regulations governing career schools, including a licensing requirement. *See* OR.REV.STAT. § 345.020(1) (1999); OR.REV.STAT. § 345.030 (1999). The ODA, Young's agency, is charged with reviewing "new publicly funded postsecondary programs and locations" and regulating schools that confer "any academic degree." OR.REV.STAT. § 348.603 (1999); OR.REV.STAT. § 348.606(1) (1999); OR. ADMIN. R. 583–030–0015(1) (1999). Oregon Administrative Rule 583–020–0021 indicates that the ODA has authority over schools which confer only non-degree certificates in order to ensure that the certificate will not "mislead the student or the public to think it is a degree." Furthermore, the ODA is empowered to review postsecondary "programs." OR. ADMIN. R. 583–040–0005(2) (1999). A "program" is a course of instruction that leads to a non-degree certificate, other than one signifying only proof of attendance. OR. ADMIN. R. 583–040–0010(3) (1999).

The Center argues that a genuine issue of material fact exists as to whether Young was acting within the scope of his employment with the ODA when he investigated the Center's program.[2] To determine

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. At oral argument, the Center conceded that it had abandoned its other claims on Eleventh Amendment grounds.

2. If Young was acting within the scope of his employment, the Oregon Tort Claims Act

whether Young's actions were within the scope of employment, we consider "whether the act in question is of a kind [Young] was hired to perform, whether the act occurred within the authorized time and space and whether [Young] was motivated, at least in part, by a purpose to serve the employer." *Brungardt v. Barton*, 69 Or. App. 440, 685 P.2d 1021, 1023 (Or.Ct.App. 1984).

First, regarding the initial *Brungardt* factor, it is clear that Young's actions with respect to the Center were of the type he had been hired to perform. As an official at the ODA, he was required to review new postsecondary "programs." Or.Rev. Stat. § 348.603 (1999). That is exactly what Young did.

The parties also disagree whether Young was motivated by a desire to serve his employer, as the third *Brungardt* factor requires.[3] The only evidence in the record to cast any doubt upon Young's motivation is a curious reference, in a letter to the University, noting a "relationship with officials from other schools." There is, however, strong evidence that Young acted, at least partially, pursuant to a proper motivation to serve his employer, which is all the law requires. Young: (1) initiated the investigation only after he received a written complaint; (2) revealed his "relationship" with the College to the University; and (3) attempted to assist the University and the Center in complying with the law. The trial court correctly concluded that Young was acting within the scope of his employment.

## II

■ The Center next assigns error to the trial court's ruling on the summary judgment motion "without allowing discovery." The initial question with respect to discovery is whether the Center's reference to a need for more discovery constituted a "motion" under Federal Rule of Civil Procedure 56(f). That rule directs the court to grant further discovery where a party shows it cannot "present by affidavit facts essential to justify the party's opposition" to summary judgment. We have held that such references "do not qualify as motions under [R]ule 56(f)[, which] requires affidavits setting forth the particular facts expected from the movant's discovery." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986); *accord State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (parties must submit affidavit showing "[ (1) ] the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that those sought-after facts are 'essential' to resist the summary judgment motion"). Because the Center failed to move for further discovery pursuant to Rule 56(f), the trial court was not required to rule.

## III

■ The Center next assigns error to the trial court's judgment dismissing its section 1983 claim. The Center argues that Young violated its rights under the negative Commerce Clause. It claims that it need not abide by Or.Rev.Stat. § 345.030 (1999), because it is not a "ca-

---

("OTCA"), which would substitute the State of Oregon as the defendant, applies, and Eleventh Amendment immunity bars this action. Or.Rev.Stat. § 30.265(1)(1999); *see also Walker v. TSPC*, 152 Or.App. 190, 953 P.2d 403, 408 (Or.Ct.App.) (OTCA indemnifies employees "from personal financial responsibility for injuries resulting from conduct within the course and scope of their duties"), *rev. allowed* 327 Or. 484, 971 P.2d 408 (Or.1998).

3. Neither party disputes that Young's actions took place in an "authorized time and space," the second *Brungardt* factor.

reer school," and that Young's attempt to regulate the Center was discriminatory.

 The appropriate constitutional standard for reviewing a statute that is not facially discriminatory in a Commerce Clause challenge is as follows:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Although the Center asserts that Young enforced the law inequitably, nowhere does the Center attempt to show how that might be so. The Center states that enforcing the law is "unfair against out-of-state schools," but the plain language of the statute belies this argument, and the Center does not argue that the law is not enforced against Oregon schools. The Center fails to show that the law's effect on interstate commerce is more than incidental, or that the burden of the law is undue compared to its benefits.

AFFIRMED.