Neal A. HOUT,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

YAMHILL COUNTY,
*Intervenor-Defendant.*

(TC 4484)

Trial was held November 17, 2000, in the courtroom of the Oregon Tax Court, Salem.

Neal A. Hout, Plaintiff (taxpayer), argued the cause *pro se.*

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, filed an Answer for Defendant (the department) but did not appear at trial.

Rick Sanai, Yamhill County Assistant County Counsel, McMinnville, argued the cause for Defendant-Intervenor (the county).

Decision for Defendant and Intervenor rendered January 23, 2001.

### CARL N. BYERS, Judge.

Plaintiff (taxpayer) appeals from a magistrate Decision upholding the denial of taxpayer's claim for refund of property taxes. Taxpayer claims that his property should not have been disqualified from special farm-use assessment and that he is entitled to a refund of the additional taxes paid. Trial *de novo* was held November 17, 2000, in the courtroom of the Oregon Tax Court, Salem.

FACTS

In 1994, taxpayer purchased 25 acres of farmland. At the time of purchase, the land was zoned for nonexclusive farm use and received special farm-use assessment. After purchasing the property, taxpayer continued to obtain special farm-use assessment. Taxpayer constructed a personal residence and two pole barns on the property, fenced portions of it, and worked to develop it as a farm. Taxpayer acquired two horses, three beef cows, one pig, four goats, five or six chickens, and some cats and dogs. Taxpayer abruptly changed his plans to develop the property in 1997 when he was divorced. Taxpayer put the property up for sale, disposed of the farm animals, and moved from the property.

In February 1999, the Yamhill County Assessor sent taxpayer a letter and a gross income questionnaire. The letter advised taxpayer that an appraiser would physically inspect the property for farm use. Taxpayer completed and returned the gross income questionnaire showing $168 income in 1996 from a pig, but no income in 1997 or 1998. In May 1999, an appraiser from the assessor's office visited the property and saw no farm-use activity. Based upon the appraiser's inspection and the questionnaire, the assessor determined the property no longer qualified for special farm-use assessment. On June 9, 1999, the assessor sent taxpayer a letter stating that the property was being disqualified from special farm-use assessment and that it "will result in back

taxes being levied in the amount of $10,320.74."[1] Taxpayer appealed from that action on August 27, 1999, to the Magistrate Division of the Oregon Tax Court.

On June 14, 1999, taxpayer signed an earnest-money agreement to sell the property, which had been on the market for over two years. The earnest money agreement acknowledged that the property was specially assessed and provided that if, as a result of the buyer's actions or the closing of the transaction, the property became disqualified from special farm-use assessment, the buyer would be responsible for and pay the taxes when due. The agreement then states:

> "However, if as a result of the Seller's actions *prior to closing, the Property either is disqualified* from its entitlement to special use assessment *or loses its deferred property tax status*, Seller shall be responsible for and shall pay at or before closing all deferred and/or additional taxes and interest which may be levied against the Property and shall hold Buyer completely harmless therefrom." (Emphasis added.)

Based upon the above-quoted language, the escrow company prepared closing documents requiring taxpayer to pay the $10,320.74 in additional taxes. Taxpayer testified that he did not become aware of that obligation until the day of closing. When made aware of it, he objected but was informed that if the additional taxes of $10,320.74 were not paid, the transaction would not close. Therefore, taxpayer signed the necessary documents, the sale closed, and a check in the amount of $10,320.74 was sent by the escrow company to the Yamhill County Tax Collector. The county cashed the check in satisfaction of the potential additional taxes. Taxpayer seeks a refund of those taxes.

---

[1] ORS 308.382(1)(b) provides that:

"The additional tax imposed * * * shall remain as potential additional tax liability for the property, but shall not be collected unless [the owner requests in writing that the tax be imposed.]"

All references to the Oregon Revised Statutes are to 1997.

## ISSUES

Taxpayer's appeal presents two issues: (1) Did the assessor err in disqualifying the property from special farm-use assessment? (2) Is taxpayer entitled to a refund of additional taxes paid?

## ANALYSIS

■ Based on all of the evidence submitted, the court finds that the assessor correctly disqualified taxpayer's property from special farm-use assessment in June 1999. Construing the evidence most favorably to taxpayer, even when taxpayer had the maximum number of animals, the farm use was marginal. It must be remembered that special farm-use assessment was intended to benefit "bonafide" farms. *Beddoe v. Dept. of Rev.*, 8 OTR 186 (1979). The statute requires that the person claiming farm-use assessment intends to make a profit in money. *Everhart v. Dept. of Rev.*, 15 OTR 76, 79 (1999). Hobby farms, where land-owners maintain a few domestic animals and pets, do not qualify as bonafide farms. Here, the only income taxpayer ever reported receiving was $168 from a pig.[2]

Even if taxpayer's use of the property initially qualified, it is clear that it did not qualify for special assessment in 1998 and 1999. Taxpayer divorced his wife, moved from the property, and disposed of the farm animals. The property was listed for sale and there were no farming activities.[3]

■ Taxpayer contends that even if the property were properly disqualified, the potential additional taxes should not have been paid. ORS 308.382(4) provides, in relevant part:

"(a) The additional tax * * * may be imposed at any time after disqualification of the property from special assessment as farmland if the property owner so requests.

---

[2] The court questions that amount because taxpayer reported that the pig was consumed by his family.

[3] Upon selling the property, taxpayer certified for federal income tax purposes that all of the property was residential property and no portion had been used for business or rental purposes. That certification seems inconsistent with taxpayer's claim of farm use.

"(b)   A request for imposition of tax under this section shall be made in writing to the county assessor."

The statute specifies that if the request is made prior to August 15, the potential additional taxes are added to the current tax roll and collected along with other property taxes. If the request is made after August 15, the potential additional taxes are added to the next general property tax roll.

The statute does not anticipate the common circumstance here where an owner sells the property and, as a condition of the sale, must pay the potential additional taxes in order to convey clear title. In such circumstances, the owner generally cannot wait for the taxes to be placed on the next property tax roll and paid in due course. The taxes must be paid immediately or the sale will not close.

Taxpayer argues that he did not make a request in writing to the assessor to impose the taxes as required by the ORS 308.382(4)(b). In response, Intervenor Yamhill County contends that by executing the earnest money agreement and the escrow instructions, taxpayer appointed the escrow company as his agent.[4] Both arguments miss the mark.

The requirements of ORS 308.382(4)(b) are not applicable here because the assessor did not impose the additional taxes. At the time of closing the sale, the additional taxes were still only "potential." The need to pay the taxes arose only because of taxpayer's earnest money agreement. Therefore, taxpayer was confronted by his own escrow agent with the need to pay the taxes. Although taxpayer objected, he nevertheless agreed to and signed the documents approving the payment.

■    The real question is: If an owner proffers a check to the tax collector for potential additional taxes and that check is accepted, may the owner later claim that he did not request

---

[4] The county would attribute the escrow agent's actions to taxpayer. The flaw in that argument is that the escrow agent did not request the assessor to impose the taxes. Also, the escrow instructions state that:

"All terms and provisions of the earnest money agreement, amendments or addenda thereto, have been complied with to the complete satisfaction of the undersigned parties or will be complied with outside of this escrow."

the additional taxes be paid and seek a refund of the same? The answer to that question must be no.

ORS 308.382(1)(b) provides that the potential additional taxes "shall not be collected" unless pursuant to subsection (4). That subsection requires the owner to make a written request to the assessor before the assessor may impose the taxes. However, that statutory requirement is for the protection of the owner and may be waived. *See Turney v. J.H. Tillman Co.*, 112 Or 122, 228 P 933 (1924); *Welker v. TSPC*, 152 Or App 190, 953 P2d 403 (1998). The court finds that taxpayer waived the requirement by tendering payment to the tax collector.

Taxpayer may have felt that he had no choice, but that is because payment was required by his sale agreement and he wanted the sale to be completed. However, taxpayer's desire to close the sale of the property does not vitiate his actions that resulted in payment of the potential additional taxes.[5] Therefore, taxpayer's claim for a refund of the additional taxes paid must be denied. Accordingly, judgment will be entered consistent with this Opinion. Costs to neither party.

---

[5] Taxpayer testified that he was told by the county he could pay and later appeal. Obviously, if that advice was given, it was in error. However, taxpayer may not rely upon that advice when his own agreement required him to pay the taxes.